**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

| | |
|---|---|
| UNICREDITO ITALIANO SPA, *et al.*, | : |
| | : |
| Plaintiffs, | : Civil Action No. |
| | : 02 Civ. 5328 (LTS)(JCF) |
| v. | : |
| | : |
| JPMORGAN CHASE BANK, *et al.*, | : |
| | : |
| Defendants. | : |

------------------------------------------------------------------------x

| | |
|---|---|
| DK ACQUISITION PARTNERS, L.P., *et al.*, | : |
| | : |
| Plaintiffs, | : Civil Action No. |
| | : 08 Civ. 0446 (LTS)(JCF) |
| v. | : |
| | : |
| J.P. MORGAN CHASE & CO., *et al.*, | : |
| | : |
| Defendants. | : |

------------------------------------------------------------------------x

| | |
|---|---|
| AVENUE CAPITAL MANAGEMENT II, L.P., *et al.*, | : |
| | : |
| Plaintiffs, | : Civil Action No. |
| | : 08 Civ. 0447 (LTS)(JCF) |
| v. | : |
| | : |
| J.P. MORGAN CHASE & CO., *et al.*, | : |
| | : |
| Defendants. | : |

------------------------------------------------------------------------x

## PRE-CONFERENCE STATEMENT

Counsel for all parties in the above-captioned actions respectfully submit this Pre-Conference Statement pursuant to the Court's Initial Conference Order in each of the above-captioned actions, dated March 27, 2008.

## 1.    A concise statement of the nature of this action

The *DK Acquisition* and *Avenue Capital* plaintiffs bring their lawsuits under New York and Texas common law. The *UniCredito* plaintiffs bring their action under New York law. The Defendants are the same in all three actions.

Plaintiffs in *UniCredito* and the alleged predecessors-in-interest of the Plaintiffs in *DK Acquisition* and *Avenue Capital* (the "Original Lenders") collectively lent billions of dollars to Enron Corporation ("Enron") on October 25, 2001, five weeks before Enron declared bankruptcy on December 2, 2001. The Original Lenders lent money to Enron under a $1.25 billion, five-year revolving credit facility (the "May 2000 Credit Facility"), documented by a credit agreement dated as of May 18, 2000 (the "May 2000 Credit Agreement"), and a $1.75 billion, 364-day revolving credit facility (the "May 2001 Credit Facility"), documented by a credit agreement dated as of May 14, 2001 (the "May 2001 Credit Agreement"). The May 2000 and May 2001 Credit Facilities are collectively referred to as the "Credit Facilities." The May 2000 and May 2001 Credit Agreements are collectively referred to as the "Credit Agreements."[1] All of the Plaintiffs are parties (or alleged successors-in-interest to parties) to one or more of the

---

[1] Also at issue in the *UniCredito* and *Avenue Capital* actions is a third syndicated credit facility – a $500 million letter of credit facility (the "L/C Facility"). Many of the same Original Lenders who participated in the Credit Agreements also participated in the L/C Facility, which permitted the issuance of letters of credit supporting certain of Enron's obligations to third parties. Various letters of credit were issued under the L/C Facility and were presented for payment on various dates. Except for damages calculations and certain contract issues, the operative facts relating to the L/C Facility are substantially the same as for the Credit Facilities. Further, *UniCredito* asserts a claim under a bilateral letter of credit facility with Enron, which it entered into at the same time as the May 2000 Credit Agreement.

Credit Facilities, which were stated to be used for general corporate purposes, including the backstopping of Enron's commercial paper program. The *UniCredito* action is brought by two banks who participated in the Credit Facilities. The *DK Acquisition* action and the *Avenue Capital* action are brought by entities that allege they are successors in interest to the banks who participated in the Credit Facilities.

Defendant Citibank, N.A. was the paying agent under the Credit Agreements; Defendants JPMorgan Chase Bank N.A. and Citibank, N.A. were the co-administrative agents for the Credit Agreements; and Defendants J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc. (f/k/a Salomon Smith Barney Inc.) were the co-lead arrangers for the Credit Agreements.[2] Citibank, N.A. and J.P. Morgan Chase Bank N.A. were also lenders under the Credit Facilities. Citibank, N.A. and its affiliates collectively are referred to as the "Citigroup Defendants"; JPMorgan Chase Bank and its affiliates are collectively referred to as the "JPMC Defendants."

Plaintiffs allege that the Citigroup Defendants and the JPMC Defendants joined Enron in committing fraud (including, as to each Defendant group, as Enron's aider and abettor and co-conspirator) on the Lenders to induce the October 25, 2001 disbursement of billions of dollars, and that defendants Citibank N.A. and JPMorgan Chase Bank N.A. breached contractual obligations concerning conditions precedent to the October 25, 2001 borrowing.

Defendants deny engaging in fraud, aiding and abetting fraud by Enron, or any other wrongdoing in connection with the Credit Facilities or the L/C Facility. Defendants raise additional defenses, including that the Credit Agreements expressly bar many of the claims asserted by the Plaintiffs in these actions, and that any damages suffered by Plaintiffs were not proximately caused by any of the wrongdoing Plaintiffs allege.

---

[2] Defendant JPMorgan Chase Bank was the Paying Agent for the L/C Facility.

2.    **The status of settlement discussions and the prospects for settlement of the action in whole or in part**

There have been no significant settlement discussions between the Plaintiffs and Defendants. In January 2003, the *UniCredito* plaintiffs and Defendants attended a court-ordered mediation before Magistrate Judge Francis, which did not result in settlement.

In April 2008, the parties conferred regarding the possibility of participating in mediation. All parties are willing to participate in mediation of this dispute. Plaintiffs are willing to participate, provided that such mediation does not delay or interfere with the trial schedule in these cases.

3.    **Whether any motions are pending or being briefed, and a concise description of the nature and status of any such motions**

The following motions are fully briefed, pending, or forthcoming:[3]

3.1    Plaintiffs' fully briefed Motion for Partial Summary Judgment, seeking a determination that Defendants allegedly violated Section 3.01(b) of the Credit Agreements, which Plaintiffs allege required them to obtain prior to funding the loans a resolution from Enron's Board of Directors "approving....each Notice of Borrowing." (*DK Acquisition* S.D. Tex. Dkt. # 153, 158, 159, 163-83, 188-192, 194; *Avenue Capital* S.D. Tex. Dkt. # 78, 83-100, 107-111, 113; *UniCredito* S.D. Tex. Dkt. # 121, 124-131, 141-146).

3.2    Defendants' fully briefed Motion for Judgment on the Pleadings, seeking to dismiss certain of the *DK Acquisition* plaintiffs' and *Avenue Capital* plaintiffs' claims based on certain issues addressed in this Court's Opinion & Order, dated October 10, 2003, in the

---

[3] Pursuant to the Court's request, the parties will provide the Court with copies of all filings concerning the motions listed herein, which copies will correspond to the Second Amended Complaint filed in this Court by the *DK Acquisition* plaintiffs on April 1, 2008.

*UniCredito* action (*DK Acquisition* S.D. Tex. Dkt. # 220, 228, 231, 235; *Avenue Capital* S.D. Tex. Dkt. # 151, 157, 160, 163).

       3.3     Defendants' Motion for Summary Judgment, seeking to dismiss all of Plaintiffs' non-contractual claims due to Plaintiffs' alleged failure to demonstrate that Defendants' actions proximately caused the Original Lenders' alleged losses (*DK Acquisition* S.D. Tex. Dkt. # 237, 238; *Avenue Capital* S.D. Tex. Dkt. # 165, 166; *UniCredito* S.D. Tex. Dkt. #169-171, 176). Pursuant to a stipulation between the parties, Plaintiffs' opposition to this motion is due April 28, 2008, and Defendants' reply is due June 12, 2008.

       3.4     *DK Acquisition* plaintiffs' Motion for Partial Summary Judgment on Standing and Real Party in Interest (forthcoming).

       3.5     Defendants' Motion for Partial Summary Judgment with respect to claims asserted by the *DK Acquisition* plaintiffs based on their holding of interests in the Credit Facilities and the L/C Facility originally held by WestLB, which Defendants allege are collaterally estopped by a judgment of the English High Court of Justice with respect to an earlier action involving WestLB and certain of the JPMC Defendants (forthcoming).

       3.6     Defendants' Motion for Partial Summary Judgment with respect to the standing of certain of the *DK Acquisition* plaintiffs and certain of the *Avenue Capital* plaintiffs to assert certain of the interests they claim to be asserting in the actions (forthcoming).

       3.7     Defendants' Motion for Partial Summary Judgment based on the principle of *in pari delicto* (forthcoming).

       3.8     Defendants' Motion for Partial Summary Judgment based on lack of reliance (forthcoming).

3.9    The *Avenue Capital* and *UniCredito* plaintiffs object to the filing of any further dispositive motions as successive motions that should have been made during the past two years when the parties filed other dispositive motions.

**4.    A concise statement of each party's position as to the basis of this Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount.**

There are no unresolved jurisdictional questions in this case.  Jurisdiction is alleged for each of these actions pursuant to 28 U.S.C. § 1334(b), and, in addition, over the *UniCredito* action pursuant to 28 U.S.C. § 1332, and over the *DK Acquisition* action pursuant to 28 U.S.C. § 1452(a).

**5.    A concise statement of all material uncontested or admitted facts**

On October 25, 2001, the Original Lenders, Citibank, N.A., and JPMorgan Chase Bank N.A. (plus other financial institutions not implicated in these actions) advanced a total of $3 billion to Enron under the May 2000 Credit Facility, documented by the May 2000 Credit Agreement, and under the May 2001 Credit Facility, documented by the May 2001 Credit Agreement.  Payments aggregating $373,708,155 were also made by Original Lenders, Citibank, N.A., and JPMorgan Chase Bank N.A. (plus other financial institutions not implicated in these actions) under eight letters of credit that had been issued under the L/C Facility prior to Enron's bankruptcy.  Enron filed for bankruptcy on December 2, 2001.

**6.    A concise statement of all uncontested legal issues**

The Credit Agreements and the L/C Facility Agreement each contain a governing law provision, Section 9.07, stating that the contracts are governed by New York law.

**7.    A concise statement of all legal issues to be decided by the Court**

7.1    The parties respectfully refer to the list of outstanding and pending motions (Item 3, *supra*), which include legal issues that are to be decided by this Court.

7.2    Also to be decided by the Court are choice of law determinations with respect to (a) whether New York or Texas law apply to any and all causes of action not governed by Section 9.07 of the Credit Agreements; (b) other substantive issues, including, but not limited to, apportionment of damages, if any, and prejudgment interest; and (c) the degree to which these choice of law determinations are affected by this Court's ruling in *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 497 (S.D.N.Y. 2003).

**8.    Each party's concise statement of material disputed facts**

8.1    Plaintiffs' Statement

In general, Plaintiffs have alleged that the Defendants knowingly and intentionally defrauded, and helped Enron defraud, the Lenders.  This fraud resulted in Plaintiffs' disbursing billions of dollars to Enron, the borrower under the Credit Agreements, on October 25, 2001 -- only five weeks before Enron declared bankruptcy.  Enron was unable to repay the loans and collapsed into bankruptcy on December 2, 2001.

Enron's management sought to conceal from the Lenders, rating agencies, and the public its true financial condition.  For years prior to Enron's bankruptcy in 2001, Enron's management engaged in numerous transactions which were intended to, and did, manipulate and distort -- by billions of dollars -- the company's reported financial results.  These transactions included phony commodities sales and sham asset sales.  They resulted in, *inter alia,* reported debt levels that were materially lower than the company's actual debt levels, and reported cash flows that were much higher than the company's actual cash flows.  Defendants, knowing that these transactions were not legitimate business transactions and were intended to render Enron's public

6

financial statements false and misleading, nevertheless structured and participated in these transactions as Enron's counterparties. In doing so, they earned substantial fees for themselves.

The central purpose of Enron's and Defendants' fraud was to deceive Enron's creditors, including the Lenders, and rating agencies about the true financial condition of the company. One of the largest frauds directed at Enron's creditors was the one which was perpetrated in connection with the Credit Agreements. There is a compelling evidentiary record -- including documents from Defendants' own officers and employees and from the files of Enron, and including the testimony of Enron's former (and now convicted and imprisoned) CFO -- which shows that Defendants knowingly concealed, and assisted Enron in concealing, this fraud from the Lenders.

In October 2001, Defendants breached their contracts with the Lenders, defrauded the Lenders, and aided in the defrauding of the Lenders by disseminating and/or allowing to be disseminated a Notice of Borrowing, which included representations from Enron's management that Enron's public financial statements were fairly presented in accordance with GAAP. Enron's representations were false because the financial statements were not fairly presented in conformity with GAAP. There is a compelling evidentiary record demonstrating that Defendants knew these representations to be false. Nevertheless, Defendants disseminated the misrepresentations to the Lenders, thereby inducing the Lenders to disburse billions of dollars to Enron just weeks before it collapsed into bankruptcy.

A further critical step that Defendant Citibank and Defendant JPMorgan Chase Bank took to facilitate Enron's October 25, 2001 fraud was their failure or refusal to confirm that the conditions precedent to Enron's borrowing had been met. One such condition set forth in Section 3.01 of the Credit Agreements – and one that was simple and straightforward to verify –

was that the Enron Board of Directors had passed a resolution, satisfactory in form and substance to Defendants JPMorgan Chase Bank and Citibank, approving each Notice of Borrowing. In fact, the Enron Board of Directors had passed no such resolution; Enron's corrupt management was proceeding without authority from the Board, and in contravention of the Credit Agreements. Defendants' failure or refusal to determine that Enron met the conditions precedent in the Credit Agreements not only violated their contractual obligations but also was against their own internal policies. Their misconduct directly assisted Enron in realizing its objective of fraudulently obtaining billions of dollars from the Lenders on October 25, 2001.

8.2    Defendants' Statement

Defendants deny Plaintiffs' allegations of wrongdoing. The structured finance transactions that the JPMC Defendants and the Citigroup Defendants each separately engaged in with Enron, which form the centerpiece of Plaintiffs' complaints, were legitimate structured finance transactions. The accounting and disclosures with respect to these structured finance transactions were Enron's responsibility, but in any event the JPMC Defendants and the Citigroup Defendants believed at the time, and continue to believe today, that Enron's accounting and disclosures for these transactions were accurate and proper.

Plaintiffs (and their alleged predecessors-in-interest) are sophisticated financial institutions that are familiar with, and themselves engaged in, the same types of structured finance transactions that they now allege were fraudulent. Indeed, most of the Original Lenders themselves participated in similar transactions with Enron, and many of them participated in some of the very same transactions with Enron that Plaintiffs now allege were fraudulent.

In any event, the structured finance transactions that the JPMC Defendants and the Citigroup Defendants engaged in with Enron in no way caused or contributed to Enron's collapse

or to any losses experienced by Plaintiffs or their alleged predecessors-in-interest, and thus Plaintiffs are unable to prove proximate causation, which is an essential element of their claims.

With respect to Plaintiffs' allegations concerning the conduct of the Defendants and their alleged duties under the Credit Facilities, Defendants at all times complied with their obligations under the Credit Facilities. Indeed, it is the Plaintiffs who are now violating the Credit Agreements by asserting claims against the Defendants which they represented under the Credit Agreements they would never assert against the Defendants, and which are barred under the Agreements, as this Court has already ruled with respect to the *UniCredito* plaintiffs. *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485 (S.D.N.Y. 2003). In light of the provisions in the Credit Agreements whereby Plaintiffs disclaimed any reliance upon the Defendants, Plaintiffs cannot claim to have reasonably relied upon any alleged misrepresentations by Defendants, as this Court held in *UniCredito*. Defendants were not responsible for the Lenders' decisions to participate in the Credit Facilities and to loan funds to Enron thereunder. Moreover, at the time the Credit Facilities were entered into and at the time Enron issued Notices of Borrowing, it was Enron that was responsible for making representations to the Lenders concerning its financial statements and other matters, not Defendants.

Defendants obtained the Board resolution that the Plaintiffs now claim was missing or deficient, provided copies of that resolution to all of the Original Lenders at the time the Credit Facilities were entered into, and heard no complaint from any of the Original Lenders at the time as to the resolution being inadequate as Plaintiffs now allege. Enron's Board was fully aware that funds were being borrowed by Enron under the Credit Facilities, and have testified that this action was approved.

9.    **A concise statement of the measure of proof and on whom the burden of proof falls as to each cause of action or defense**

9.1 Plaintiffs' Causes of Action

*Aiding and Abetting Fraud/Aiding and Abetting Fraudulent Inducement/Civil Conspiracy to Commit Fraud*

Plaintiffs have the burden of establishing their claim(s) for aiding and abetting fraud/aiding and abetting fraudulent inducement/civil conspiracy to commit fraud by clear and convincing evidence.

*Breach of Contract*

Plaintiffs have the burden of establishing this claim by a preponderance of the evidence.

*Aiding and abetting breach of fiduciary duty.*

Plaintiffs have the burden of establishing this claim by a preponderance of the evidence.

*Fraud and Fraudulent inducement.*

Plaintiffs have the burden of establishing these claims by clear and convincing evidence.

*Breach of implied duty of good faith and fair dealing in the Credit Agreements.*

Plaintiffs have the burden of establishing this claim by a preponderance of the evidence.

9.2 Defendants' Cause of Action

*Contractual indemnification.*

Defendants have the burden of establishing this claim by a preponderance of the evidence.

10.    **A statement as to whether all parties consent to transfer of the case to a magistrate judge for all purposes, including trial (without identifying which parties have or have not consented)**

The parties do not consent to the transfer of the case to a magistrate judge.

11.     **What, if any, changes should be made in the timing, form or requirements for disclosures under Fed. R. Civ. P. 26(a), including a statement as to when any disclosures required under Fed. R. Civ. P. were made or will be made.**

Not applicable. Discovery was complete at the time of the remand/transfer of these cases from the Southern District of Texas, subject to the parties' duty to supplement their disclosures.

12.     **The status of discovery, including the subjects on which further disclosure may be needed, and whether any remaining discovery should be conducted in phases or be limited to or focus upon particular issues, a concise description of each party's plan for any remaining discovery and a proposed discovery cut-off date.**

Discovery was complete at the time of the remand/transfer of these cases from the Southern District of Texas, subject to the parties' duty to supplement their disclosures.

13.     **Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery**

Expert discovery is complete, subject to the parties' duty to supplement their disclosures.

There has been no motion practice to date with respect to the admissibility of expert evidence. The parties have designated experts, in accordance with the expert discovery schedule governing these actions, to testify on various topics, including without limitation, the following:

a.     Generally Accepted Accounting Principles and their application to the Defendants' transactions with Enron;

b.     Materiality of Defendants' and Enron's alleged misrepresentations and omissions;

c.     Standards, customs and practices in the banking industry relating to loan syndications and the roles and responsibilities of the parties to syndicated loans;

d.     Functions that secondary markets and trading in distressed debt perform in the financial markets and the overall U.S. economy;

e.     The economic nature of the Defendants' structured finance transactions;

f.    Whether the alleged actions of the Defendants proximately caused harm to the

Plaintiffs; and

g.    The scope and magnitude of any damages allegedly suffered by Plaintiffs.

**14.    What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed**

Not applicable.  Discovery was complete at the time of the remand/transfer of these cases

from the Southern District of Texas, subject to the parties' duty to supplement their disclosures.

**15.    A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days expected to be needed for presentation of that party's case.**

All of the parties agree that, to the extent the claims are not resolved by motion, they are

to be tried to a jury.

The Plaintiffs currently estimate that they will collectively require approximately 20 trial

days.

The Defendants currently estimate that they will collectively require approximately 30

trial days.

**16.    What work, if any, remains before the case will be trial-ready**

Other than the filing of additional motions for summary judgment, if any:

Resolution of the motions listed under item 3 above;

To the extent Texas law governs loss allocation, the joinder or designation of potentially

responsible third parties.  S*ee* January 26, 2007 Opinion & Order of the United States District

Court for the Southern District of Texas (Hon. Melinda Harmon).

Pre-trial exchanges pursuant to Fed. R. Civ. P. 26;

Preparation of a joint pretrial order;

Daubert motions;

Motions *in limine*.

**17.    Other information that the parties believe may assist the Court in advancing the cases to settlement or trial**

None.

**18.    Any other orders that should be entered by the Court under Fed. R. Civ. P. 26(a) or Fed. R. Civ. P. 16(b) and (c)**

None.

Dated:  April 26, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

/s/ Charles G. Berry
Charles G. Berry (Charles.Berry@aporter.com)
Robert A. Goodman (Robert.Goodman@aporter.com)
399 Park Avenue
New York, New York  10022
Tel:  (212) 715-1000
Fax:  (212) 715-1399

*Attorneys for  Plaintiffs*
*UniCredito Italiano SpA, et al.*

BARTLIT BECK HERMAN
PALENCHAR & SCOTT

Philip S. Beck (Philip.Beck@Bartlit-Beck.com)
James B. Heaton III (JB.Heaton@Bartlit-Beck.com)
Cindy L. Sobel (Cindy.Sobel@Bartlit-Beck.com)
Courthouse Place
54 West Hubbard Street, 3rd Floor
Chicago, Illinois  60610
Tel:   (312) 494-4400
Fax:  (312) 494-4440

Joseph C. Smith, Jr. (Joseph.Smith@Bartlit-Beck.com)
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
Tel:   (303) 592-3100
Fax:  (303) 592-3140

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

/s/ David Parker
David Parker (DParker@KKWC.com)
Marc Rosen (MRosen@KKWC.com)
551 Fifth Avenue, 18th Floor
New York, New York 10176
Tel:   (212) 986-6000
Fax:  (212) 986-8866

Attorneys for Plaintiffs
DK Acquisition Partners, L.P., et al.

BOIES, SCHILLER & FLEXNER LLP

/s/ David A. Barrett
David A. Barrett (dbarrett@bsfllp.com)
Harlan A. Levy (hlevy@bsfllp.com)
Magda M. Jimenez (mjimenez@bsfllp.com)
575 Lexington Avenue
New York, New York 10022
Tel:  (212) 446-2300
Fax:  (212) 446-2350

Philip J. Iovieno (piovieno@bsfllp.com)
10 North Pearl Street
Albany, New York 12207
Tel:  (518) 434-0600
Fax:  (518) 434-0665

Attorneys for Plaintiffs
Avenue Capital Management II, L.P., *et al.*

15

/s/Thomas C. Rice
_____

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants JPMorgan Chase &
Co., JPMorgan Chase Bank, N.A., and J.P.
Morgan Securities Inc.*

/s/Brad S. Karp
_____

Brad S. Karp
Richard A. Rosen
Michael E. Gertzman
Claudia L. Hammerman
Robyn F. Tarnofsky
Julia Tarver Mason
Jonathan H. Hurwitz
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
(212) 757-3990 (Facsimile)
mgertzman@paulweiss.com

*Attorneys For Defendants Citigroup Inc.,
Citibank, N.A., and Citigroup Global Markets
Inc. (f/k/a Salomon Smith Barney Inc.)*