**Pursuant to Court Order, Certain References to Confidential Information
in this Memorandum of Law Have Been Filed Under Seal and are Redacted Herein**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
DK ACQUISITION PARTNERS, L.P.,                               :
KENSINGTON INTERNATIONAL LIMITED,                            :
RUSHMORE CAPITAL-I, L.L.C., RUSHMORE                         :
CAPITAL-II, L.L.C., and SPRINGFIELD                          :
ASSOCIATES, LLC.,                                            :
                                                             :
                                   Plaintiffs, :
                                                             :
              v.                                             :      Civil Action No. 08 Civ. 0446 (LTS)
                                                             :
JPMORGAN CHASE & CO., JPMORGAN                               :
CHASE BANK, J.P. MORGAN SECURITIES,                          :
INC., CITIGROUP INC., CITIBANK, N.A. and                     :
CITIGROUP GLOBAL MARKETS, INC. f/k/a                         :
Salomon Smith Barney,                                        :
                                                             :
                                   Defendants. :
------------------------------------------------------------ X
```

(Caption continued on next page)

```
---------------------------------------------------------------- X
AVENUE CAPITAL MANAGEMENT II, L.P.,          :
GRACIE CAPITAL, L.P., HALCYON FUND,          :
L.P., KING STREET CAPITAL, L.P.,             :
LONGACRE MASTER FUND, LTD., MAN MAC          :
3 LIMITED, ORE HILL FUND HUB LTD.,           :
MARATHON SPECIAL OPPORTUNITY                 :
MASTER FUND, LTD., RCG CARPATHIA             :
MASTER FUND, LTD., REDWOOD MASTER            :
FUND, LTD., SCOGGIN CAPITAL                   :
MANAGEMENT, L.P. II, SCOGGIN                  :
INTERNATIONAL FUND, LTD., SCOTTWOOD          :
CAPITAL MANAGEMENT, LLC, SPCP GROUP,         :          Civil Action No. 08 Civ. 0447 (LTS)
LLC, STRATEGIC VALUE CREDIT                   :
OPPORTUNITIES MASTER FUND, L.P.,             :
STRATEGIC VALUE MASTER FUND, LTD.,           :
and TRILOGY CAPITAL, LLC,                     :
                                              :
                              Plaintiffs, :
                                              :
          v.                                  :
                                              :
JPMORGAN CHASE & CO., JPMORGAN               :
CHASE BANK, J.P. MORGAN SECURITIES,          :
INC., CITIGROUP INC., CITIBANK, N.A., and    :
CITIGROUP GLOBAL MARKETS, INC. f/k/a         :
Salomon Smith Barney,                         :
                                              :
                              Defendants. :
---------------------------------------------------------------- X
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' LACK OF STANDING TO ASSERT CERTAIN CLAIMS ALLEGEDLY ACQUIRED FROM THIRD PARTIES

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
*Attorneys For Defendants Citigroup Inc., Citibank N.A., and Citigroup Global Markets Inc. (f/k/a Salomon Smith Barney Inc.)*

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities Inc.*

**Table of Contents**

Page

Table of Authorities ..................................................................................................... ii

Preliminary Statement ....................................................................................................1

Factual Background ........................................................................................................3

     A.    The Enron Credit Facilities ...............................................................3

     B.    Assignments Under the Credit Facilities .........................................4

     C.    Plaintiffs' Purchases of Enron Debt ................................................6

     D.    Deficiencies in Plaintiffs' Assignment Documentation ...................6

          (1)    *Missing Assignment and Acceptance Documents* ...............7

          (2)    *Missing Purchase and Sale Agreements* ..............................8

          (3)    *Unexecuted Documents* ........................................................9

          (4)    *Inconsistent Documents* .......................................................9

          (5)    *Identity of Original Lenders Uncertain* .............................10

     E.    The *Avenue Capital* Plaintiffs' Participation Interests ...................12

Argument ......................................................................................................................13

I.      Plaintiffs Are Not Entitled To Assert Claims Based On Debt They
      Cannot Prove They Own .........................................................................13

II.     The *Avenue Capital* Plaintiffs' "Participations" and "Partial
     Assignments of Interest" Do Not Confer Upon Them Standing To
     Sue Defendants .......................................................................................16

     A.    The *Avenue Capital* Plaintiffs' Participation Interests Do
         Not Provide Them With Standing ..................................................16

     B.    The *Avenue Capital* Plaintiffs' Belated Partial Assignments
         of Interest Do Not Provide Them With Standing ..........................19

Conclusion ...................................................................................................................23

## **TABLE OF AUTHORITIES**

### Cases

*Callicutt v. N.Y. State Comm'r of Taxation & Fin.*, 241
  A.D.2d 778 (3d Dep't 1997) ................................................................................. 22

*Citibank (South Dakota), N.A. v. Martin*, 807 N.Y.S.2d 284
  (N.Y. City Civ. Ct. 2005) ....................................................................................... 14

*Cottage Sav. Ass'n v. Comm'r of Internal Revenue*, 499
  U.S. 554 (1991) ........................................................................................................ 16

*Hibernia Nat'l Bank v. FDIC*, 733 F.2d 1403 (10th Cir.
  1984) .......................................................................................................................... 17

*In re Enron Corp.*, 302 B.R. 463 (Bankr. S.D.N.Y. 2003) ................................................. 17

*In re Okura & Co. (Am.), Inc.*, 249 B.R. 596 (S.D.N.Y.
  Bankr. 2000) .............................................................................................................. 17

*MBNA Am. Bank, N.A. v. Nelson*, No. 13777/06, 2007 WL
  1704618 (N.Y. City Civ. Ct., May 24, 2007) ...................................................... 14, 15

*Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F.
  Supp. 401 (S.D.N.Y. 1994) .................................................................................. 16, 17

*Royal Bank of Canada v. Interfirst Bank Fort Worth, N.A.*,
  No. CA4-84-0161-D, 1988 WL 192369 (N.D. Tex. Apr.
  4, 1988) ...................................................................................................................... 17

*Rushmore Recoveries X, LLC v. Skolnick*, No. 21161/05,
  2007 WL 1501643 (N.Y. Dist. Ct., May 24, 2007) ........................................... 15

*T&G Med. Supplies, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  No. 18739/2003, 2005 WL 1021510 (N.Y. City Civ. Ct.,
  Feb. 4, 2005) ............................................................................................................. 14

*Trinity Auto. Servs. Ltd. v. Silver*, No. 2006-1078, 2007
  WL 2254137 (N.Y. App. Term, July 23, 2007) .................................................... 14

*United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070
  (9th Cir. 1989) .......................................................................................................... 20

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................. 14

*Wight v. Bankamerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ............................................ 14

### Statutes

N.Y. C.P.L.R. § 213 (McKinney 2003) ............................................................... 22

N.Y. C.P.L.R. § 214(4) (McKinney 2003) .......................................................... 22

Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004(a)(4)-(5),
   16.051 (Vernon 2008) ..................................................................................... 22

### Other Authorities

29 Samuel Williston & Richard A. Lord, *A Treatise on the
Law of Contracts* § 74:3 (4th ed. 2000) ........................................................ 22

6A N.Y. Jur. 2d *Assignments* § 10 (2008) ........................................................ 22

6A N.Y. Jur. 2d *Assignments* § 86 (2008) ........................................................ 14

Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan

Securities Inc. (collectively, "JPMorgan Chase"), and Citigroup Inc., Citibank, N.A., and Citigroup

Global Markets, Inc., f/k/a Salomon Smith Barney Inc. (collectively, "Citi," and together with

JPMorgan Chase, "Defendants"), respectfully submit this memorandum of law, together with the

accompanying affidavit of Alan C. Turner and the exhibits annexed thereto, in support of their

motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

Plaintiffs' standing to sue Defendants in these actions rests entirely upon their

ability to prove that they received valid assignments of claims from banks that were parties to the

credit agreements in question but that are not parties to these lawsuits.  Plaintiffs, however, have

failed to provide that proof with respect to substantial portions of their claims.  Case law makes

abundantly clear that the numerous defects in Plaintiffs' assignment documents deprive them of

standing to bring the present claims against Defendants.

As the Court is aware, Plaintiffs in these actions are twenty-two distressed debt

investment funds that bought Enron bank debt on the secondary market after Enron filed for

bankruptcy, at deep discounts from face value.  The bank debt at issue in these lawsuits was

advanced to Enron by original lenders (the "Original Lenders") under three credit agreements –

two revolving credit agreements for a total of $3 billion, and one letter of credit agreement with a

cap of $500 million (collectively, the "Credit Agreements").  The Credit Agreements contain

provisions setting out the terms upon which assignments of the Original Lenders' interests could

be made.

As purchasers of Enron's distressed debt in the secondary market, the *DK* and

*Avenue Capital* Plaintiffs suffered no economic harm as a result of Enron's collapse.  They were

not original parties to the Credit Agreements and they never advanced any funds to Enron.  Their

1

claims against Defendants in these actions are predicated solely on their purported status as "successors-in-interest" to more than fifty of the Original Lenders. Thus, Plaintiffs claim to "stand in the shoes" of those Original Lenders. *See* DK Cplt. ¶¶ 1, 17-18; Avenue Capital Cplt. ¶¶ 1, 34.[1] However, to the extent that Plaintiffs have failed to produce evidence establishing that they obtained valid assignments of the Original Lenders' interests, the Credit Agreements and governing law bar them from asserting such claims in these lawsuits.

Two main deficiencies exist with respect to Plaintiffs' purported assignments. *First*, there are significant (and fatal) gaps in many of the "assignment" documents Plaintiffs have produced. The documents through which Plaintiffs seek to establish ownership of the claims asserted in these actions are in many instances incomplete and riddled with substantive defects or omissions. Indeed, the *DK* Plaintiffs' very own designated expert, William C. Carey, identified in his expert report ***over sixty instances*** in which the *DK* Plaintiffs' documentation governing nearly $400 million in purported claims is deficient in one way or another. The *Avenue Capital* Plaintiffs have made no effort whatsoever to establish the ownership of their alleged claims, but a review of the documents that they produced reveals similar flaws. The law is clear that in order to establish their right to bring these claims as successors-in-interest, Plaintiffs must prove through competent evidence their undivided ownership of the claims asserted.

*Second*, the *Avenue Capital* Plaintiffs face an additional insurmountable obstacle. Approximately ██████████ of the *Avenue Capital* Plaintiffs' claims were initially acquired as "participations" rather than "assignments." Participations are recognized under the Credit

---

[1]    Citations to "DK Cplt." are to the Second Amended Complaint in *DK Acquisition Partners L.P., et al. v. JPMorgan Chase & Co., et al.*, No. 08 Civ. 446, and citations to "Avenue Capital Cplt." are to the First Amended Complaint in *Avenue Capital Management II, L.P., et al. v. JPMorgan Chase & Co., et al.*, No. 08 Civ. 447.

2

Agreements and governing law as being a form of interest that ***does not*** constitute ownership of a claim, and that ***does not*** confer upon the "participant" the right to bring lawsuits, such as this one, against other parties. And, while the *Avenue Capital* Plaintiffs belatedly attempted to cure this defect by obtaining "Partial Assignments of Interest," those efforts were entirely in vain because the documents once again failed to properly assign claims in accordance with the terms of the Credit Agreements.

Defendants respectfully request that this Court grant them summary judgment, ruling that these defects in Plaintiffs' assignment documents, which are described in greater detail below, render Plaintiffs' evidence of ownership of the claims asserted in these actions legally inadequate and, accordingly, render such claims subject to dismissal. The precise amount of Plaintiffs' purported claims to be dismissed will thereafter be determined based on the Court's ruling.

## FACTUAL BACKGROUND

### A.    The Enron Credit Facilities

The three Credit Agreements at issue in these lawsuits govern syndicated facilities in which more than fifty-five of the world's largest financial institutions were lenders. These syndicated credit facilities include: a May 2000, $1.25 billion, five-year revolving credit facility (the "Long-Term Revolver") (Ex. 1[2]); a May 2001, $1.75 billion, 364-day revolving credit facility (the "Short-Term Revolver"; together with the Long-Term Revolver, the "Revolving Credit Facilities") (Ex. 2); and a $500 million letter of credit facility (the "LC Facility"; together with the Revolving Credit Facilities, the "Credit Facilities") (Ex. 3); *see also* DK Cplt. ¶ 2; Avenue Capital Cplt. ¶ 5. JPMorgan Chase and Citigroup acted as Co-Arrangers and Co-

---

[2]    All citations to "Ex. __" refer to the exhibits to the Affidavit of Alan C. Turner, sworn to on July 11, 2008, and submitted herewith.

3

Administrative Agents under the Credit Facilities, with Citigroup also acting as Paying Agent under the Revolving Credit Facilities and JPMorgan Chase acting as Paying Agent under the LC Facility. *See* Exs. 1-3.

The Revolving Credit Facilities were initially unfunded and were meant to backstop Enron's commercial paper program, providing protection in the event Enron faced an immediate need for cash to redeem commercial paper upon its maturity if the company was unable to issue fresh commercial paper to replace it. *See* Ex. 4 at JPMNBY102046752; Ex. 5 at JPMBNY102043628. That scenario came to pass on October 25, 2001, when Enron was forced to borrow the full $3 billion available under the Revolving Credit Facilities. Exs. 6, 7; *see also* DK Cplt. ¶¶ 3, 32; Avenue Capital Cplt. ¶ 198.

On December 2, 2001, when Enron filed for bankruptcy, the Original Lenders were still owed the $3 billion they had advanced to Enron on October 25, 2001, under the Revolving Credit Facilities, and were also ultimately owed an additional $374 million by Enron on several letters of credit that were issued and drawn under the LC Facility. *See* DK Cplt. ¶ 3; Avenue Capital Cplt. ¶ 210.

**B.    Assignments Under the Credit Facilities**

The Credit Agreements specify the requirements that must be met for a valid assignment by an Original Lender of its rights and obligations under the Credit Facilities to another party. Under Section 9.06, an assignment of rights and obligations under the Credit Facilities requires that the assignor and assignee, among other things, execute and deliver to the Paying Agent an "Assignment and Acceptance." *See* Exs. 1, 2 § 9.06.[3]  Specifically, Section 9.06(a) provides:

---

[3]    Under the LC Facility, the corresponding provision is Section 10.06. *See* Ex. 3 § 10.06. Accordingly, references herein to Section 9.06 should also be read as referring to Section 10.06 of the LC Facility.

Each bank may, in accordance with applicable law, assign to one or more banks or other entities all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment, the Advances owing to it and the Note held by it); provided, however, that . . . (iii) each such assignment shall be to an Eligible Assignee, and (iv) *the parties to each such assignment shall execute and deliver to the Paying Agent (with a copy to be provided to the Co-Administrative Agents), for acceptance by the Paying Agent and recording by the Paying Agent in the Register, an Assignment and Acceptance*, together with any Note then held by such assigning Bank and any Note then held by such assignee and a processing and recordation fee of $3,000[.]"

*Id.* at § 9.06(a) (emphasis added; underscore in original).

The Credit Agreements require that the "Assignment and Acceptance" to be delivered to the Paying Agent under Section 9.06 be "in substantially the form of Exhibit F." *See id.* Exhibit F is a form Assignment and Acceptance document, laying out the terms and conditions of the assignment. Pursuant to this document, the assigning party "sells and assigns to the Assignee, without recourse, and the Assignee hereby purchases and assumes from Assignor, an interest in and to all of the Assignor's rights and obligations under the Credit Agreement and the other Loan Documents[.]" *See* Ex. 1 at JPMUCI0008571; Ex. 2 at JPMUCI0003291. Where the assignee is not a "Bank" as defined in the agreements, but rather an "Eligible Assignee," Section 9.06 requires that both the Paying Agent and Enron expressly consent to the assignment by executing the Assignment and Acceptance.[4] *See* Ex. 1, 2 § 9.06; *see also* Ex. 1 at JPMUCI0008574; Ex. 2 at JPMUCI0003294.

---

[4]    An "Eligible Assignee" is defined as "(a) any Bank, and (b) with the consent of the Paying Agent and the Borrower (which consent will not be unreasonably withheld), any other commercial bank or financial institution not covered by clause (a) of this definition . . . ." *See* Ex. 1 at JPMUCI0008445; Ex. 2 at JPMUCI0003174. In turn, "Banks" are defined as "the lenders listed on the signature pages hereof and each Eligible Assignee that becomes a Bank party hereto pursuant to Section 2.16, Section 2.18 or Section 9.06(a), (b) and (d)." *See* Ex. 1 at JPMUCI0008442; Ex. 2 at JPMUCI0003171.

5

Thus, a valid transfer of an Original Lender's rights and obligations under the
Credit Agreements, and valid transfers by each successor-in-interest in the chain of title between
the Original Lender and the Plaintiff, require the execution, delivery and acceptance of a valid
Assignment and Acceptance substantially in the form of Exhibit F to the Credit Agreements. *See*
Exs. 1, 2 § 9.06(a) ("Upon such execution, delivery, acceptance and recording, from and after the
effective date specified in each Assignment and Acceptance, (x) the assignee thereunder shall be
a party hereto and, ***to the extent that rights and obligations hereunder have been assigned to it***
***pursuant to such Assignment and Acceptance, have the rights and obligations of a Bank***
***hereunder***.") (emphasis added).

C.    **Plaintiffs' Purchases of Enron Debt**

The *DK* and *Avenue Capital* Plaintiffs are 22 separate investment funds that
specialize in purchasing distressed debt in the secondary market. *See* DK Cplt. ¶ 16; Avenue
Capital Cplt. ¶ 33. After Enron filed for bankruptcy on December 2, 2001, Plaintiffs purchased
large amounts of Enron debt (at varying discounts to par), including debt owed by Enron under
the Credit Facilities. *See* DK Cplt. ¶ 18; Avenue Capital Cplt. ¶ 34. The *DK* Plaintiffs claim to
have purchased more than $1.57 billion worth of debt under the Credit Facilities. *See* Ex. 8 at 7.
The *Avenue Capital* Plaintiffs claim to have purchased approximately $552 million of debt under
the Credit Facilities. *See* Ex. 9 at 3.

D.    **Deficiencies in Plaintiffs' Assignment Documentation**

There are numerous deficiencies in the assignment documents of both the *DK* and
*Avenue Capital* Plaintiffs which preclude them from establishing legal ownership of a substantial
portion of those claims. These deficiencies can be grouped into five separate categories: (1)
missing Assignment and Acceptance documents; (2) missing Purchase and Sale Agreements; (3)
unexecuted documents; (4) inconsistent documents; and (5) claims for which the identity of the

6

Original Lender in whose shoes the Plaintiff seeks to stand is unclear. For starters, the *DK* Plaintiffs' own designated expert, Mr. Carey, who was tasked with tracing the chain of title with respect to the *DK* Plaintiffs' purported claims, *see* Ex. 8 at 2, 8-11, has acknowledged that these defects plague at least $393 million of the *DK* Plaintiffs' purported holdings. *See* Ex. 1 to Turner Ex. 8.[5] Additionally, Defendants believe that Plaintiffs will be unable to show that other of their purported holdings are not subject to one or more of these defects. As demonstrated below, all such claims are subject to dismissal as a matter of law.

(1)    *Missing Assignment and Acceptance Documents*

As discussed above, under the Credit Agreements, a valid assignment requires that the parties execute and deliver to the Paying Agent an Assignment and Acceptance (*see* sample at Exhibit 10). For many of Plaintiffs' alleged debt holdings, however, this critical document is missing. In fact, Mr. Carey identified in his expert report at least *twenty-six* separate instances in which an Assignment and Acceptance is missing from one or more of the transactions forming the chain of title through which the *DK* Plaintiffs seek to establish a valid transfer of ownership from the Original Lender to the Plaintiff.[6]

Although, as discussed below, Plaintiffs bear the burden of doing so, neither the *Avenue Capital* Plaintiffs' damages expert, Stephen R. Braunstein, nor anyone else on their behalf, undertook to trace the *Avenue Capital* Plaintiffs' chain of title for any of their alleged debt holdings. Nonetheless, a review of the documents they produced reveals that the *Avenue Capital* Plaintiffs' documentation likewise suffers from this defect. For example, in July 2003,

---

[5]    Because the *Avenue Capital* Plaintiffs have not undertaken such an analysis, the precise dollar amount of their deficient holdings is uncertain at this time.

[6]    *See* Exhibit 1 to Turner Ex. 8 at 11, 13, 15, 20, 21, 41, 59, 90, 126, 127, 129, 130-131, 132, 133, 135, 137, 141-144, 156, 162, 168-169, 176, 190.

Strategic Value Master Fund, Ltd. purportedly purchased ███████ of debt under the Short-Term Revolver from ████████████████████; however, an Assignment and Acceptance does not appear to have been produced for this transaction or the prior transactions in the chain of title.

In the absence of valid Assignment and Acceptance documents evidencing an unbroken chain of title between an Original Lender and the Plaintiff who purports to hold the debt, Plaintiffs are unable to establish ownership of the claims of specific Original Lenders that they purport to assert in these lawsuits.

> (2)    *Missing Purchase and Sale Agreements*

Another category of documents that Plaintiffs appear to rely upon in bringing the present claims are Purchase and Sale Agreements (*see* sample at Exhibit 11). While the Purchase and Sale Agreements are not sufficient to transfer title under the terms of the Credit Agreements, which require that an Assignment and Acceptance be delivered and accepted, the Purchase and Sale Agreements produced by Plaintiffs with respect to many of their holdings purport to memorialize the terms of the sale and identify the specific interests being transferred. In particular, the Purchase and Sale Agreements contain provisions that expressly purport to transfer tort claims, which Plaintiffs seek to assert here. *See id.* at DK-KSF000208. Notably, the Assignment and Acceptance documents are silent as to the transfer of tort claims. *See* Ex. 10 at ¶ 1. Plaintiffs, however, have failed to produce Purchase and Sale Agreements for many of the transactions through which they claim to have acquired the right to assert tort and other claims against Defendants. Mr. Carey identified in his expert report at least *twenty-one* such instances in the case of the *DK* Plaintiffs alone.[7] With respect to the *Avenue Capital* Plaintiffs, an

---

[7]    *See* Exhibit 1 to Turner Ex. 8 at 19, 40-41, 49, 75-76, 100-101, 103-106, 125-127, 137, 143, 156, 162, 176, 190.

illustrative example is an October 2004 purchase by Man Mac 3 Limited of ███████ of debt

under the Short-Term Revolver, for which a Purchase and Sale Agreement does not appear to

have been produced.

> (3)    *Unexecuted Documents*

There are numerous instances in Plaintiffs' chain-of-title documentation in which

the Assignment and Acceptance and/or the Purchase and Sale Agreement are not executed.  As

discussed below, an unexecuted assignment document is patently insufficient under governing

law to establish ownership of a claim.  Mr. Carey, the *DK* Plaintiffs' damages expert, identified

in his expert report at least seven instances of this defect in the *DK* Plaintiffs' documents.[8]  Such

defects also affect the *Avenue Capital* Plaintiffs.  For example, the Purchase and Sale Agreement

produced by Strategic Value Master Fund in connection with its purchase from ███████ of

███████ of debt under the Short-Term Revolver is not executed.  *See* Ex. 12.

> (4)    *Inconsistent Documents*

There are a number of purported assignment transactions in which the documents

are inconsistent with one another or as to which the chain of title is otherwise unclear.  For

example, in one such transaction, the Assignment and Acceptance states that ███████ of debt

is being transferred to a purported predecessor-in-interest to a *DK* Plaintiff, whereas the Purchase

and Sale Agreement for the same transaction states that only ███████ is being transferred (*see*

sample at Exhibit 13).  Mr. Carey has identified at least seven transactions that suffer from this

defect.[9]

---

[8]    *See* Exhibit 1 to Turner Ex. 8 at 23, 48, 52, 140-141, 144.

[9]    *See* Exhibit 1 to Turner Ex. 8 at 46-47, 69-73.

*(5)    Identity of Original Lenders Uncertain*

Finally, some of Plaintiffs' transactions present yet another intractable defect, namely that the documentation does not delineate which of several possible Original Lenders' interests a particular Plaintiff acquired or currently holds. To illustrate with an example, in October 2005, Redwood Master Fund, Ltd. ("Redwood"), one of the *Avenue Capital* Plaintiffs, purchased from ██████████ a participation interest in ██████████ worth of debt in the LC Facility. *See* Ex. 14. ██████████, in turn, had previously purchased an unspecified amount of debt from at least two of the Original Lenders, ██████████ and ██████████████████. Based on the documents produced by the *Avenue Capital* Plaintiffs, it is impossible to discern how much of Redwood's October 2005 purchase originated with ██████████ as opposed to ██████████████. In another example, in June 2003, Scoggin Capital Management, L.P. II ("Scoggin"), another of the *Avenue Capital* Plaintiffs, purchased ██████████ under the Long-Term Revolver from ████████████████████████████. *See* Ex 15. ██████████, however, had previously purchased ██████████ of debt from two different Original Lenders, ██████████████████ and ██████████, and the documents produced by Scoggin do not establish whether the debt Scoggin purchased in June 2003 originated with ██████, ██████████████ or perhaps both.

Indeed, the *Avenue Capital* Plaintiffs have themselves identified many transactions that appear to suffer from this type of defect. In response to correspondence from Defendants complaining that their production of assignment documents was highly disorganized and seemingly incomplete, and that their responses to Defendants' interrogatories did not adequately identify the Original Lenders in whose shoes the *Avenue Capital* Plaintiffs purport to stand, *see* Ex. 16, the *Avenue Capital* Plaintiffs produced supplemental information purporting to clarify their interrogatory responses and to identify the Original Lenders for each of their alleged

10

claims. *See* Ex. 17. For each Plaintiff entity, the *Avenue Capital* Plaintiffs produced a list of their alleged debt holdings, along with the date of purchase, amount purchased, and the alleged identity of the Original Lender. This unverified chart, which does not cite to any of the assignment documents, is, of course, not sufficient evidence of the chain of title for each of the claims the *Avenue Capital* Plaintiffs seek to assert. Tellingly, however, even by their own admission, the *Avenue Capital* Plaintiffs were unable to identify the Original Lenders that correspond to some of their holdings. For some of their alleged holdings, they stated "Information Unavailable" as to the identity of the Original Lender. *See id.* (Man Mac 3 Limited purchase of █████████ under LC Facility). For other transactions, they appear to identify several banks as being the Original Lenders for the same piece of debt. *See id.* (Man Mac Limited purchase of █████████ under the LC Facility).

Similarly, Mr. Carey testified on behalf of the *DK* Plaintiffs that in some cases, he was unable to trace the *DK* Plaintiffs' debt holdings back to a particular Original Lender based on his review of the documents alone, and instead had to rely entirely on counsel's oral representations to him. *See* Ex. 18 at 89:2-97:16. Specifically, when an Assignment and Acceptance or Purchase and Sale Agreement was missing from Plaintiffs' documentation, Mr. Carey testified that he "was able to address inquiries to counsel and they were able to tell us how [the transaction] happened." *Id.* at 96:21-97:9. Mr. Carey was asked: "So some of the tracing analysis is based on oral communications you got from Plaintiffs' counsel?"; he replied: "I think so, yes." *Id.* at 97:13-16.

In these examples, which are representative of many others that afflict Plaintiffs' holdings, Plaintiffs are unable to establish through competent evidence in whose shoes they purportedly stand in asserting their claims, and in what amounts. This is critically important

because the claims are *not* fungible when it comes to attempting to establish Defendants' liability. Plaintiffs must prove, for each Original Lender in whose shoes they purport to stand, that the Original Lender had a valid claim against Defendants for fraud, aiding-and-abetting fraud, civil conspiracy, or any other theory Plaintiffs assert. That turns in part on questions of fact that are specific to each Original Lender, such as whether the *Original Lender* reasonably relied upon Defendants; whether the *Original Lender* was aware that Enron engaged in structured finance transactions of the very type that Plaintiffs allege were kept hidden; and whether the *Original Lender* would have acted any differently in entering into the Credit Agreements and funding the Facilities had it known the information that Plaintiffs allege was kept hidden from it. To the extent Plaintiffs cannot identify with precision which Original Lenders' shoes they purport to stand in, and the amount of debt they hold for each such Original Lender, Plaintiffs' claims cannot be proven.

### E.    The *Avenue Capital* Plaintiffs' Participation Interests

Beyond these fatal deficiencies in proving a valid chain of title for each of their holdings, the *Avenue Capital* Plaintiffs face another critical standing problem caused by the manner in which they acquired their debt holdings. Based on the discovery the *Avenue Capital* Plaintiffs have provided, it appears that for a significant portion of their claims in all three Credit Facilities, they merely purchased a *participation interest* in debt legally held by other parties. *See, e.g.*, Ex. 14. As discussed more fully below, a participation does not convey ownership or title of the debt to the participant or create contractual privity between the participant and the other parties to the credit agreement. It simply allows the participant to share in the proceeds or other benefits associated with the owner's contractual rights under the Credit Facility.

Discovery has further revealed that, consistent with the limited scope of the participation interests the *Avenue Capital* Plaintiffs acquired in this manner, none of the

transactions by which the *Avenue Capital* Plaintiffs acquired their participation interests were

documented by use of the Assignment and Acceptance form required by the Credit Agreements.

Instead, a "Participation Agreement" was typically used. *See id.* Of the $552 million of debt

that the *Avenue Capital* Plaintiffs claim to hold in the Credit Facilities, close to ▮▮▮▮▮▮ was

originally made up of such participation interests, with ▮▮▮▮▮▮ under the LC Facility, ▮▮

▮▮▮▮ under the Long-Term Revolver, and ▮▮▮▮▮▮ in the Short-Term Revolver.

      Beginning in May 2006 – after Defendants raised Plaintiffs' lack of standing in

connection with briefing of a summary judgment motion by Plaintiffs on another issue,[10] which

motion was not ruled upon by the District Court for the Southern District of Texas prior to the

transfer of these actions to this Court – the *Avenue Capital* Plaintiffs began attempting to cure

their lack of standing by obtaining "Partial Assignments of Interest." *See, e.g.*, Ex. 19. To date,

discovery reveals that the *Avenue Capital* Plaintiffs have attempted to convert approximately

▮▮▮▮▮▮ worth of their participations into Partial Assignments of Interest. The remaining

amount, approximately ▮▮▮▮▮▮, is still held solely through participations.

## ARGUMENT

I. **PLAINTIFFS ARE NOT ENTITLED TO ASSERT CLAIMS BASED ON DEBT THEY CANNOT PROVE THEY OWN**

      As described in the Factual Background section above, Plaintiffs' chain-of-title

documentation is in many respects incomplete, unexecuted, internally inconsistent or missing

altogether. These defects in Plaintiffs' documentation are fatal to their claims based on such

debt. Plaintiffs are suing Defendants for billions of dollars, and each component of their debt

---

[10] In that motion, which is now pending before this Court, the *Avenue Capital* Plaintiffs sought summary judgment with respect to claims under the LC Facility, alleging that JPMorgan Chase had mishandled the back-office documentation on certain of the letters of credit issued thereunder. JPMorgan Chase's April 11, 2006 opposition to the motion argued, among other things, that the *Avenue Capital* Plaintiffs did not have standing because they only held participation interests. The issues raised in the earlier motion are otherwise irrelevant to the issues raised in the present motion.

holdings is worth in the millions or tens of millions of dollars. Plaintiffs bear the burden of establishing ownership of these claims.

Where, as here, a plaintiff seeks to assert claims that were allegedly acquired from a predecessor-in-interest through assignment, the plaintiff bears the burden of establishing legal ownership of those claims. Absent such proof, the plaintiff lacks standing, and its claims must be dismissed.[11] *See Trinity Auto. Servs. Ltd. v. Silver*, No. 2006-1078, 2007 WL 2254137, at *1 (N.Y. App. Term, July 23, 2007) ("Although plaintiff alleged in its complaint that it was the owner of the contract, no proof of any assignment was ever submitted. Thus, plaintiff failed to conclusively establish standing to sue defendant on the alleged debt.") (citation omitted); *MBNA Am. Bank, N.A. v. Nelson*, No. 13777/06, 2007 WL 1704618, at *4 (N.Y. City Civ. Ct., May 24, 2007) ("It is the assignee's burden to prove the assignment.") (internal quotations omitted); *Citibank (South Dakota), N.A. v. Martin*, 807 N.Y.S.2d 284, 291 (N.Y. City Civ. Ct. 2005) (same); *T&G Med. Supplies, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 18739/2003, 2005 WL 1021510, at * 5 (N.Y. City Civ. Ct., Feb. 4, 2005) ("Because the assignee has no standing as a plaintiff in litigation without an effective assignment, plaintiff has the burden to establish an effective assignment throughout the litigation...."); *see also* 6A N.Y. JUR. 2d *Assignments* § 86 (2008) ("A party bringing suit on an assignment must conclusively prove the assignment and that it, therefore, has standing to sue the debtor....").[12]

---

[11]  The doctrine of standing addresses the question of "whether the [plaintiff] is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Wight v. Bankamerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (noting that "[f]oremost among the prudential requirements is the rule that a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'" (quoting *Warth*, 422 U.S. at 499)).

[12]  The means by which assignments and participations can be effected are expressly provided for in the Credit Agreements, the terms of which are governed by New York law. *See* Exs. 1, 2 § 9.07.

To prove legal ownership and thus acquire standing to bring a lawsuit, a successor-in-interest must establish through competent evidence an unbroken "chain of valid assignments" from the original holder of the claims all the way through to the putative plaintiff. *See MBNA,* 2007 WL 1704618, at *4 ("[T]he full chain of valid assignments must be provided, beginning with the assignor where the debt originated and concluding with the Petitioner."); *see also Rushmore Recoveries X, LLC v. Skolnick*, No. 21161/05, 2007 WL 1501643, at *3 (N.Y. Dist. Ct., May 24, 2007).

In *Rushmore Recoveries*, for example, plaintiff claimed to be the assignee of certain debt originally owed by defendant to Citibank. Citibank allegedly assigned the debt to NCOP Capital, Inc., who then assigned it to New Century Financial Services, Inc., who in turn assigned it to plaintiff. The court denied plaintiff's motion for summary judgment, holding, among other things, that plaintiff had failed to establish an unbroken chain of ownership of the claim. *See Rushmore Recoveries X, LLC*, 2007 WL 1501643, at *3. The court held:

> [T]here is a brake [*sic*] in the chain of the assignments from Citibank down to the Plaintiff. The purported assignment from NCOP Capital, Inc. to New Century Financial Services, Inc., Plaintiff's alleged assignor, is not signed at all on behalf of NCOP Capital, Inc. There being no competent proof that the assignment to New Century Financial Services, Inc. was valid, the Plaintiff cannot establish the validity of the assignment from New Century Financial Services, Inc. to the Plaintiff, preventing the granting of summary judgment for this reason as well.

*Id.*

Based on the foregoing, Defendants respectfully request that this Court rule that the deficiencies in Plaintiffs' assignment documents, described above, render Plaintiffs' evidence of ownership of the claims asserted in these actions insufficient as a matter of law, and, accordingly, render such claims subject to dismissal. Defendants request that the Court rule that

15

the claims identified by the *DK* Plaintiffs' expert, Mr. Carey, as suffering from one or more of the above-referenced defects be dismissed. Defendants further request that the Court rule that the burden is on Plaintiffs to come forward with sufficient proof of ownership of the remaining debt holdings on which their claims are based from the record evidence of this case,[13] and that their failure to do so will result in dismissal of all deficiently documented claims.

II.    THE *AVENUE CAPITAL* PLAINTIFFS' "PARTICIPATIONS" AND "PARTIAL ASSIGNMENTS OF INTEREST" DO NOT CONFER UPON THEM STANDING TO SUE DEFENDANTS

A.    The *Avenue Capital* Plaintiffs' Participation Interests Do Not Provide Them With Standing

The *Avenue Capital* Plaintiffs purchased only *participation interests* with respect to almost half of their alleged total debt holdings. These participation interests are *not* valid assignments (in fact, they do not even purport to be assignments), and do not confer standing upon the *Avenue Capital* Plaintiffs to assert the present claims against Defendants.

In the typical participation agreement – and in the participation agreements held by the *Avenue Capital* Plaintiffs – a bank that owns contractual rights under a facility agrees to distribute to the participant some predetermined portion of the benefits of "the lender's security interest and priority of payment." *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 408 (S.D.N.Y. 1994). In entering such a participation agreement, however, the lender does not assign its contract rights to the participant. *See, e.g., Cottage Sav. Ass'n v. Comm'r of Internal Revenue*, 499 U.S. 554, 557 n.3 (1991) ("By exchanging merely participation interests rather than the loans themselves, each party retained its relationship with the individual obligors.").

---

[13]    Discovery on these issues has long since been concluded, and Plaintiffs should not be permitted to attempt to support any purported claims with documents that were not produced prior to the fact discovery cut-off.

Consequently, an entity holding a mere participation interest does not have the rights or obligations of a lender under the facility because the participant is not in privity with the borrower or the other parties to the credit agreement. *In re Enron Corp.*, 302 B.R. 463, 475 (Bankr. S.D.N.Y. 2003) (explaining that with respect to participation "only the originating lender has privity of contract with the borrower and the terms of the agreement set forth the rights of the other participating lenders"); *Natwest USA Credit Corp.*, 858 F. Supp. at 407-08; *In re Okura & Co. (Am.)*, 249 B.R. 596, 608, 615 (Bankr. S.D.N.Y. 2000) (noting that "as a general rule, the participants do not have privity of contract with the underlying borrower," and finding that holder of participation interest did not have standing to enforce provisions of letter of credit facility); *Royal Bank of Canada v. Interfirst Bank Fort Worth, N.A.*, No. CA4-84-0161-D, 1988 WL 192369, at *9 (N.D. Tex. Apr. 4, 1988) (finding that participant "has no rights under an original loan contract between the debtor and the lead bank").

Given the limited nature of the interest being transferred, "courts are generally in agreement that a transfer of an undivided interest and participation in the context of a true participation does not allow the participant to assert a claim against the borrower." *In re Okura*, 249 B.R. at 608; *see also In re Enron Corp.*, 302 B.R. at 475 (explaining that with respect to participation "an individual participant cannot assert a claim against the borrower"). Instead, a participant's rights are limited to those set forth in its agreement with the lender with which it contracted, and its remedies are limited to claims against that lender. *Hibernia Nat'l Bank v. FDIC*, 733 F.2d 1403, 1407 (10th Cir. 1984) ("The 'participants' can look solely to the [lender] for satisfaction of their claims because they are not themselves creditors of the borrowers and cannot assert creditor claims against the borrowers.").

17

The documents under which the *Avenue Capital* Plaintiffs purportedly acquired close to ▮▮▮▮▮▮ worth of their holdings are plainly participation agreements and are not valid assignments. They do not comply in form or substance with the Assignment and Acceptance form prescribed under the Credit Agreements, and they lack any provisions affirmatively assigning all rights and obligations under the Credit Agreement to the purchaser. Indeed, many of the participation agreements that the *Avenue Capital* Plaintiffs entered into expressly state that "[p]ursuant to this Agreement, Seller wishes to grant to Participant and Participant wishes to purchase from Seller an undivided *100% participation in the Seller's interest*." *See, e.g.*, Ex. 14 at AC-RCM0001621 (emphasis added). Moreover, the participation agreements also contain "elevation" provisions that make it crystal clear that (i) the *Avenue Capital* Plaintiffs were receiving only a "participation interest in the rights and obligations underlying the Transferred Rights" and (ii) additional steps would need to be taken by the parties to even attempt to effect a valid assignment. Specifically, the participation agreements provide that:

> *[U]pon payment of the Purchase Price to Seller, Buyer shall, until receipt of the Required Consents, automatically and without further action acquire and hold a 100% participation interest in the rights and obligations underlying the Transferred Rights* (the "Participation") and agrees to reimburse Seller for the Assumed Obligations. *The Parties shall thereafter use commercially reasonable good faith efforts to convert the Participation to an outright assignment as contemplated by this Agreement and, upon the receipt of all necessary consents to the Assignment* (including without limitation, payment of the Transfer Fee (which shall be shared equally between Buyer and Seller) the Participation shall automatically elevate to a full assignment (the "Elevation") *and the Transferred Rights shall be assigned to Buyer* without further action by either party.

Ex. 20 § 14.1(a) (emphasis added). The "Required Consents" that must be obtained before any rights are transferred to the buyer are defined in the participation agreements as "the consent of

18

the [Paying] Agent, the Borrower and the Issuing Bank (as defined in the Credit Agreement)."

*See id.* at AC-ACM-10000033. These mandatory consents called for under the participation

agreements were never obtained by the *Avenue Capital* Plaintiffs.

The participation agreements further provide that the party from whom the

participation was purchased *retains* responsibility and authority for asserting any claims in

connection with the Credit Agreement. For example, one such agreement states that "all

decisions in respect of Litigation," including claims against Defendants, "will be made by Seller

in its sole discretion . . . ." Ex. 21 § 14.1(b).

Moreover, the Credit Agreements themselves make clear that if a Bank that is

party to the Credit Agreement sells a participation interest to another entity, "such Bank's

obligations under this Agreement . . . shall remain unchanged . . . [and] such Bank shall remain

solely responsible to the other parties hereto for the performance of such obligations . . . ." Ex.

1, 2 § 9.06(e); Ex. 3 § 10.06(e).

Consistent with the above-cited authority and the unambiguous language in the

Credit Agreements and the *Avenue Capital* Plaintiffs' participation agreements, it is beyond

dispute that the *Avenue Capital* Plaintiffs are not assignees and do not have any standing to assert

claims against Defendants based on debt purportedly acquired by way of participation

agreements.

**B.    The *Avenue Capital* Plaintiffs' Belated Partial Assignments of Interest Do Not Provide Them With Standing**

In May 2006, the *Avenue Capital* Plaintiffs began obtaining "Partial Assignments

of Interests" with respect to some of the debt previously held solely by participation. The fact

that Plaintiffs decided to take this action evinces an awareness that their participation agreements

do not provide them with standing to pursue their claims against Defendants. *See United States*

19

*ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989) (finding that "[t]he Wulffs'

persistent efforts to obtain an assignment from B&K of this claim . . . show that the Wulffs were

aware that B&K was the real party in interest. Thus, there was no difficulty and no mistake in

determining who was the proper party to bring suit.").

The Partial Assignments of Interest appear to be agreements between the *Avenue*

*Capital* Plaintiffs and the parties from whom they previously purchased a participation interest in

the Credit Facilities. *See, e.g.*, Ex. 19. They provide that "notwithstanding anything to the

contrary contained in the Temporary Participation Agreement . . . Assignor irrevocably sells,

assigns, transfers and grants unto Assignee all of Assignor's right, title and interest in and to the

portion of Assigned Rights specifically described in [the participation agreement]." *Id.* The

Partial Assignments of Interest further provide that "Assignor agrees . . . [to] take all such

actions in accordance with applicable law as Assignee may reasonably request to effect the

assignment of the Assigned Claims hereunder, in each case at Assignee's expense." *Id.* Finally,

the agreements state that "Assignor further ratifies and authorizes the continuation of the action

concerning the Assigned Claims brought by Assignee in the United States District Court for the

Southern District of Texas styled 'Avenue Capital Management II, L.P., et al, v. J.P. Morgan

Chase & Co. et al., Civil Action No. H-05-3031,' to the extent such action relates to the

Assigned Claims and agrees to be bound by the result in that action to the extent the results relate

to the Assigned Claims." *Id.* The Partial Assignments of Interest are executed only by the

"assignor" and one or other of the *Avenue Capital* Plaintiffs. *See id.*

The *Avenue Capital* Plaintiffs' efforts to obtain standing through these new

agreements were unsuccessful for two important reasons. First, as noted above, under Section

9.06 of the Credit Agreements, a valid assignment requires that the parties to the transaction

execute and submit to the Paying Agent an Assignment and Acceptance substantially in the form prescribed by the Credit Agreement. Claims cannot be validly transferred in the absence of an Assignment and Acceptance that is executed by the parties and delivered to the Paying Agent. *See* Ex. 1, 2 § 9.06(a)(x); Ex. 3 § 10.06(a)(x). Second, the Credit Agreements provide that any party that was not an original signatory to the Credit Facilities who wishes to obtain an Original Lender's "rights and obligations" under the Credit Facilities must first obtain the consent of the Paying Agent and Enron for such an assignment to be valid. *See* Ex. 1 at JPMUCI0008445; Ex. 2 at JMPUCI0003174.[14]

The *Avenue Capital* Plaintiffs' Partial Assignments of Interest satisfy neither of these requirements. Their terms differ substantially from the terms set forth in the Assignment and Acceptance form prescribed by the Credit Agreements. Specifically, the Partial Assignments of Interest purport only to transfer the "assigned rights" that are described in the earlier participation agreements, but are completely silent as to any assignment of the rights and obligations described in the Credit Agreements and the Assignment and Acceptance. This is important because the Plaintiffs are seeking to obtain rights to assert claims against the Defendants under the Credit Agreements, without otherwise being a party to the Credit Agreements or being subject to the full range of rights and obligations set forth in the Credit Agreements, including, for example, indemnification obligations in favor of the Co-Administrative and Paying Agents.

Moreover, the Partial Assignments of Interest are not executed by the Paying Agent or Enron and did not receive the consents required under the Credit Agreements. *See* 6A

---

[14] Further, the Credit Agreements provide that "the amount of . . . each such assignment . . . shall in no event be less than $5,000,000." *See* Ex. 1, 2 § 9.06(a). Here, discovery has revealed that of the seventy-three pieces of debt that Plaintiffs originally obtained through "participations" and have attempted to convert to "Partial Assignments of Interest" only *nineteen* of them are for $5 million or more.

21

N.Y. JUR. 2d *Assignments* § 10 (2008) ("A valid clause may prohibit the assignment of the contract without the written consent of the other party."). Notably, the Partial Assignments of Interest themselves state that the assignee "shall take all such actions . . . to effect the assignment of the Assigned Claims hereunder." *See* Ex. 19. Thus, the documents themselves evidence the parties' awareness that further steps would be required in order to effect a valid assignment pursuant to the terms of the Credit Agreements.

Thus, the Partial Assignments of Interest do not transfer legal ownership of the debt, or the contractual right to pursue these claims, and are ineffective and invalid under the Credit Agreements. *See, e.g., Herman v. New York*, 484 N.Y.S.2d 453, 455 (N.Y. Ct. Cl. 1984) (holding that failure to satisfy conditions precedent to valid assignment or to follow appropriate procedures renders transfer of rights invalid); *see also Callicutt v. N.Y. State Comm'r of Taxation & Fin.*, 241 A.D.2d 778, 779 (3d Dep't 1997) (upholding finding that no valid assignment was effected because documents did not comply with requirements for assignment); 29 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 74:3 (4th ed. 2000) ("An assignment must also comply with any other requirements mandated by the contract between the parties or by statute."). Accordingly, the Partial Assignments of Interest do not operate as valid assignments under the Credit Agreements, and do not cure Plaintiffs' lack of standing with respect to such claims.[15]

---

[15]     Any attempt by the *Avenue Capital* Plaintiffs to try and cure their lack of standing now would be too late. Under Texas law, the statute of limitations for fraud, breach of fiduciary duty and breach of contract claims is four years from the date of accrual. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a)(4)-(5), 16.051 (Vernon 2008). Accordingly, the statute of limitations on Plaintiffs' claims expired, at the latest, on December 2, 2005, four years from the date Enron filed for bankruptcy (which even pre-dates Plaintiffs' efforts to obtain Partial Assignments of Interest, which commenced on or about May 18, 2006). Under New York law, the statute of limitations for fraud and breach of contract is six years, *see* N.Y. C.P.L.R. § 213 (McKinney 2003), and three years for breach of fiduciary duty, *see* N.Y. C.P.L.R. § 214(4) (McKinney 2003), and thus those limitations periods expired, at the latest, on December 2, 2007.

## **CONCLUSION**

Defendants respectfully request that the Court grant them summary judgment ruling that the defects in Plaintiffs' assignment documents, including the five categories described above, render Plaintiffs' evidence of ownership of such claims legally inadequate; that the claims identified by the *DK* Plaintiffs' expert, Mr. Carey, as suffering from one or more of the above-referenced defects are dismissed; and that the remaining claims of the Plaintiffs that suffer from one or more of these defects are also subject to dismissal once quantified. Defendants further request that the Court rule that the *Avenue Capital* Plaintiffs' purported acquisitions of debt via "participations" and "Partial Assignments of Interest" are insufficient as a matter of law to confer upon Plaintiffs standing to assert claims in this action based on such debt, and therefore that these claims are subject to dismissal once quantified. Finally, Defendants request that the Court rule that the burden is on Plaintiffs, as alleged successors-in-interest to the Original Lenders, to come forward with sufficient proof of ownership for each and every one of their claims based on the record evidence of this case, and that their failure to do so shall result in dismissal of all deficiently documented claims.

23

Dated:  July 11, 2008

Respectfully submitted,

_____
Thomas C. Rice
David J. Woll
Alan C. Turner
Gabriel Torres
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502
trice@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A., and J.P. Morgan
Securities Inc.*

_____
Brad S. Karp
Richard A. Rosen
Michael E. Gertzman
Claudia L. Hammerman
Robyn F. Tarnofsky
Julia Tarver Mason
Jonathan H. Hurwitz
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
mgertzman@paulweiss.com

*Attorneys For Defendants Citigroup Inc., Citibank
N.A., and Citigroup Global Markets Inc. (f/k/a
Salomon Smith Barney Inc.)*

24